**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOHN JACOBS, | ) | Civil Action No. |
| | ) | |
| *Plaintiff*, | ) | Filed Electronically |
| | ) | |
| vs. | ) | |
| | ) | |
| CARNEGIE INSTITUTE d/b/a | ) | |
| CARNEGIE MUSEUMS OF PITTSBURGH, | ) | |
| | ) | |
| *Defendant*. | ) | |
| | ) | |

## COMPLAINT IN CIVIL ACTION

Plaintiff, John Jacobs, by and through the undersigned counsel, files the following Complaint in Civil Action against Defendant, Carnegie Institute d/b/a Carnegie Museums of Pittsburgh, averring as follows:

## THE PARTIES

1. Plaintiff, John Jacobs ("Plaintiff"), is an adult individual who resides at in Pittsburgh, Pennsylvania.

2. Defendant, Carnegie Institute d/b/a Carnegie Museums of Pittsburgh ("Defendant"), is a Pennsylvania domestic nonprofit corporation with a registered address of 4400 Forbes Ave., Pittsburgh, Pennsylvania 15213. Defendant's principal place of business is located at the same address. Plaintiff reported to work on a regular basis at Defendant's facility, The Andy Warhol Museum, located at 117 Sandusky St., Pittsburgh, Pennsylvania 15212 (the "Facility").

## JURISDICTION AND VENUE

**A.   This Court Possesses Subject Matter Jurisdiction Pursuant to 28 U.S.C. § 1331.**

3. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 ("Federal Question Jurisdiction") as Plaintiff is advancing claims under the Age

Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq*. (the "<u>ADEA</u>"), and the Americans with Disabilities Act Amendments Act of 2008, 42 U.S.C. § 12101, *et seq*. (the "<u>ADA</u>").

**B.      The United States District Court for the Western District of Pennsylvania is the Appropriate Venue for this Matter Pursuant to 28 U.S.C. § 1391(b).**

4.      Venue is proper in the United States District Court for the Western District of Pennsylvania, Pittsburgh Division (hereinafter, the "<u>Western District</u>") as a substantial part of the events and omissions giving rise to the Claims occurred within this judicial district. Therefore, venue is proper pursuant to 28 U.S.C. § 1391(b).

5.      Specifically, these events and omissions occurred within Allegheny County, Pennsylvania, which is one of the counties encompassed by the Western District.

6.      This matter is properly before the Pittsburgh Division of the Western District given the conduct complained of herein arose in Allegheny County, Pennsylvania, and conduct arising within Allegheny County is docketed within the Pittsburgh Division of the Western District pursuant to LCvR 3.

**C.      This Court May Exercise Personal Jurisdiction Over Defendant.**

7.      This Court may exercise personal jurisdiction over Defendant pursuant to 42 Pa. C.S. § 5301(a)(2), and this Court's exercise of jurisdiction comports with the Due Process Clause of the United States Constitution.

8.      Personal jurisdiction is proper over a defendant if the defendant is a registered Pennsylvania entity and has thus "consented" to the exercise of general personal jurisdiction pursuant to 42 Pa. C.S. § 5301. *Aetna Inc. v. Kurtzman Carson Consultants, LLC*, No. 18-470, 2019 BL 114021, at *5 (E.D. Pa. Mar. 29, 2019) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Bane v. Netlink, Inc.*, 925 F.2d 637, 641 (3d Cir. 1991)).

2

9.    42 Pa. C.S. § 5301 states: "The existence of any of the following relationships between a person and this Commonwealth shall constitute a sufficient basis of jurisdiction to enable the tribunals of this Commonwealth to exercise general personal jurisdiction over such person." 42 Pa. C.S. § 5301(a). This definition is expanded to "corporations" pursuant to 42 Pa. C.S. § 5301(a)(2) which provides:

> Corporations.—
> (i) Incorporation under or qualification as a foreign corporation under the laws of this Commonwealth.
> (ii) Consent, to the extent authorized by the consent.
> (iii) The carrying on of a continuous and systematic part of its general business within this Commonwealth. 42 Pa. C.S. § 5301(a).

10.    As discussed above, Defendant has registered itself as a domestic nonprofit corporation in the Commonwealth of Pennsylvania and thereby subjected itself to the general jurisdiction of Pennsylvania's tribunals; further, Defendant maintains the Facility in Pennsylvania and conducts business operations within Pennsylvania. Accordingly, Defendant may properly be personally brought before this Court pursuant to 42 Pa. C.S. § 5301(a)(2).

**D.    Plaintiff Has Exhausted His Administrative Remedies; His Claims are Properly Before This Court.**

11.    Plaintiff has satisfied all procedural and administrative prerequisites under 29 U.S.C. § 626(d) and 42 U.S.C. § 2000e-5 and may now proceed to bring this action before the Court. Specifically:

a. On or about January 14, 2026, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC") seeking redress for Claims at charge number 533-2026-01021 (the "EEOC Charge").

b. On February 10, 2026, the EEOC issued the Notice of Right to Sue ("RTS Notice"), affording Plaintiff 90 days within which to timely file the Claims.

3

c.   The instant complaint is filed within the 90-day time period.

## FACTUAL BACKGROUND

12.    Pertinent hereto, Plaintiff was a 63 year old man working for Defendant.

13.    Plaintiff commenced his employment with Defendant in October 2011 in the position of temporary cataloger at The Andy Warhol Museum, Pittsburgh.

14.    Over the course of his employment, Plaintiff advanced through a series of promotions, ultimately attaining the position of Associate Registrar in approximately 2021.

15.    In his role as Associate Registrar, Plaintiff's regular duties included supervising consultants, managing museum collections and registrations, handling complex institutional projects, and fulfilling international travel assignments on behalf of Defendant.

16.    Plaintiff was compensated at a rate of $24.30 per hour for 37.5 hours per week.

17.    At the time of his termination, Plaintiff had approximately 14 years of service with Defendant and was 63 years of age.

18.    Throughout his tenure, Plaintiff received consistently positive annual performance reviews, consistently meeting or exceeding expectations in every category assessed.

19.    Plaintiff was never subjected to a performance improvement plan, suspension, or any formal disciplinary action.

20.    Plaintiff reported to Amber Morgan ("Morgan"), Director of Registration and Collections, and Rachel Baron Horn ("Horn"), Executive Director.

## Age Discrimination

21.    Beginning on or about June 1, 2021, and continuing through the date of his termination, Morgan and Horn repeatedly told Plaintiff that he needed to "fit in more" with his significantly younger colleagues.

4

22.    At the time of these statements, Plaintiff believes and therefore avers he was approximately 25 years older than the next oldest colleague in his department, and the average age of his coworkers was believed to be under 30 years old.

23.    The criticisms directed at Plaintiff by Morgan and Horn were not related to his work performance. Rather, they focused on Plaintiff's need to adopt a younger communication style and to more effectively "commune" with his younger female colleagues.

24.    Morgan and Horn characterized Plaintiff as the "sole outsider" who needed to change in order to "become an insider," in effect targeting characteristics associated with his age.

25.    Defendant, through Morgan and Horn, treated Plaintiff's age-related characteristics — including his communication style and manner of professional interaction — as deficiencies requiring correction.

## Disability Discrimination

26.    In August 2025, Plaintiff suffered a strained left Achilles tendon.

27.    As a result of this injury, Plaintiff sought medical treatment, underwent an MRI, wore a boot, and completed a course of physical therapy (the "Disability").

28.    Plaintiff missed approximately five days of work due to the Disability and was unable to fulfill the international travel component of his duties due to the injury temporarily limiting his mobility.

29.    Aside from the strain of international travel, Plaintiff contends he was able to fulfill all other job duties, requirements and perform just as high a level of work, as always.

30.    In September 2025, Plaintiff was required to cancel an overseas work assignment as a result of the Disability; a younger colleague was substituted to fulfill the assignment in his place.

31.    Plaintiff communicated his medical condition and resulting inability to travel directly to Morgan, who was aware at all times that the Disability prevented Plaintiff from performing the international travel component of his duties as his recovery restricted his mobility.

### Termination

32.    On November 11, 2025, Plaintiff was called into an abrupt meeting with Morgan and a member of Defendant's human resources department, whereupon Morgan read from a brief prepared script and informed Plaintiff that his employment was being terminated.

33.    Defendant's stated reason for the termination was "a reorganization" and Defendant represented that the termination was "not performance related."

34.    Immediately following the meeting, Plaintiff was required to return his company credit card, badge, and keys, collect his personal belongings, and was escorted out of the Facility.

35.    Defendant offered Plaintiff no severance upon termination.

36.    Plaintiff's position as Associate Registrar was not eliminated. Rather, upon information and belief, Plaintiff's duties were redistributed among younger employees of Defendant following his termination.

37.    Plaintiff avers that Defendant's stated reason for his termination — "reorganization" — is pretextual, and that the actual motivating factors were Plaintiff's age and his Disability.

### COUNT I
### AGE DISCRIMINATION IN VIOLATION OF THE ADEA
### 29 U.S.C. § 621, *et seq.*

38.    Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

6

39.     The ADEA makes it unlawful for an employer to "discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

40.     The ADEA's protections apply to individuals who are at least 40 years of age. 29 U.S.C. § 631(a).

41.     To establish a *prima facie* case of age discrimination under the ADEA, a plaintiff must demonstrate: (1) he is at least 40 years of age; (2) he is qualified for the position; (3) he suffered an adverse employment action; and (4) he was ultimately replaced by someone sufficiently younger to permit an inference of age discrimination, or the circumstances otherwise give rise to an inference of discrimination. *See Smith v. City of Allentown*, 589 F.3d 684, 689 (3d Cir. 2009).

**A.     Plaintiff is a Member of the Protected Class.**

42.     At the time of his termination, Plaintiff was 63 years of age, well within the ADEA's protected class of individuals who are at least 40 years of age. 29 U.S.C. § 631(a).

**B.     Plaintiff was Qualified for His Position.**

43.     As averred hereinabove, Plaintiff served as Associate Registrar for Defendant, a position he attained after approximately a decade of progressively responsible service.

44.     Throughout his tenure, Plaintiff consistently met or exceeded all performance expectations and was never the subject of any formal disciplinary action.

45.     Plaintiff possessed and exercised the skill, experience, and advanced education — including a Master of Library Science degree from the University of Pittsburgh — necessary to perform the essential functions of his role.

46.     Accordingly, Plaintiff was qualified for his position at all times relevant herein.

**C.      Plaintiff Suffered an Adverse Employment Action.**

47.      On November 11, 2025, Plaintiff was terminated from his position as Associate Registrar with Defendant. Termination constitutes the quintessential ultimate adverse employment action under the ADEA.

48.      Moreover, beginning on or about June 1, 2021, and continuing through the date of his termination, Plaintiff was subjected to ongoing age-related comments and discriminatory scrutiny by Morgan and Horn, when compared to similarly situated employees, that altered the terms and conditions of his employment.

**D.      The Circumstances Give Rise to an Inference of Age Discrimination.**

49.      As averred hereinabove, Morgan and Horn repeatedly directed Plaintiff to "fit in more" with his significantly younger colleagues, characterized Plaintiff as the "sole outsider," and targeted him based on age-related characteristics such as his communication style and manner of professional interaction.

50.      Defendant's stated reason for Plaintiff's termination — "reorganization" — is pretextual, as Plaintiff maintained a full workload with no performance deficiencies and 14 years of exemplary service at the time of his termination.

51.      Upon information and belief, Plaintiff's duties were redistributed among younger employees of Defendant following his termination, further establishing an inference of age discrimination.

52.      Accordingly, the circumstances of Plaintiff's termination give rise to a clear inference of age discrimination.

**E.      Plaintiff is Entitled to Liquidated Damages and Attorneys' Fees.**

53.    Pursuant to the ADEA, a plaintiff may recover liquidated damages in the event an employer's discriminatory conduct was willful — that is, if the employer knew that its conduct was prohibited by the ADEA or acted in reckless disregard of that prohibition. 29 U.S.C. § 626(b); *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 126 (1985).

54.    At all times relevant herein, Defendant acted with actual knowledge that the ADEA prohibits adverse employment actions predicated on an employee's age, and yet proceeded to terminate Plaintiff's employment because of his age.

55.    As a direct and proximate result of Defendant's discriminatory conduct in violation of the ADEA, Plaintiff has suffered not only tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses he suffered and will continue to suffer.

WHEREFORE, Plaintiff, John Jacobs, seeks a judgment against Defendant, Carnegie Institute d/b/a Carnegie Museums of Pittsburgh, for willful noncompliance of the ADEA and seeks: (i) compensatory damages, including but not limited to past and future pecuniary and non-pecuniary losses, including suffering, mental anguish, inconvenience, and loss of enjoyment of life; (ii) liquidated damages in an amount equal to the back pay owed, pursuant to 29 U.S.C. § 626(b); (iii) equitable relief in the forms of back pay and front pay; (iv) the costs of instituting this action together with reasonable attorney's fees incurred by Plaintiff; (v) pre-judgment and continuing interest; and (vi) any further legal and equitable relief as this Court may deem just and proper.

## COUNT II
### DISCRIMINATION IN VIOLATION OF THE ADA
### 42 U.S.C. § 12101, *et seq.*

56.     Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

57.     The ADA was enacted to provide a national mandate designed to eliminate discrimination against qualified individuals living with disabilities. 42 U.S.C. § 12101.

58.     The ADA defines the term "disability" as: "(a) a physical or mental impairment that substantially limits one or more major life activities of such individual; (b) a record of such an impairment; or (c) being regarded as having such an impairment." 42 U.S.C. § 12102(1).

59.     The ADA further defines "major life activities" to include, in pertinent part, "walking," "lifting," and the "operation of a major bodily function, including … musculoskeletal … functions." 42 U.S.C. § 12102(2).

60.     As averred hereinabove, in August 2025, Plaintiff sustained a strained left Achilles tendon, which resulted in physical impairment requiring medical treatment, including an MRI, a walking boot, and a course of physical therapy.

61.     To establish a *prima facie* case of discrimination under the ADA, a plaintiff must demonstrate: (1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (3) he suffered an adverse employment decision as a result of discrimination. *See McGlone v. Philadelphia Gas Works*, No. 17-1399, 2018 WL 2193658, at *2 (3d Cir. May 14, 2018) (citing *Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998)).

**A.      Plaintiff is a "Disabled Person" Pursuant to 42 U.S.C. § 12102 of the ADA.**

62.    As averred hereinabove, Plaintiff sustained a strained left Achilles tendon in August 2025, which caused a physical impairment that substantially limited his ability to walk, travel, and perform related major life activities.

63.    In the alternative, Defendant "regarded" Plaintiff as having an impairment within the meaning of 42 U.S.C. § 12102(1)(C), in that Defendant perceived Plaintiff's Achilles tendon injury — and his associated inability to fulfill international travel assignments — as evidence of future mobility limitations inconsistent with his continued employment.

64.    Accordingly, Plaintiff is a "disabled person" within the meaning of the ADA.

**B.    Plaintiff was a Qualified Individual Pursuant to 42 U.S.C. § 12111 of the ADA and Was Qualified to Perform the Essential Duties of His Job.**

65.    The ADA provides that a "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

66.    Plaintiff possessed and exercised the requisite skill, experience, and education necessary to perform the essential functions of his role as Associate Registrar.

67.    At all times material, Plaintiff was qualified to perform the essential duties of his position. Plaintiff performed his duties consistently and without incident for approximately 14 years, and the Disability did not prevent him from performing the core functions of his role.

68.    Specifically, Plaintiff's Disability resulted in a temporary limitation on international travel. The essential functions of Plaintiff's role could have been performed, in their entirety, with a reasonable temporary accommodation.

**C.    Plaintiff Suffered an Adverse Employment Action.**

69.    As averred hereinabove, on November 11, 2025, Plaintiff was terminated from his employment with Defendant.

11

70.     The proximity between the onset of Plaintiff's Disability in August 2025, the cancellation of his overseas travel assignment in September 2025, and his termination on November 11, 2025, establishes a causal connection between Plaintiff's Disability and his adverse employment action.

71.     Defendant, through Morgan, had actual knowledge of Plaintiff's Disability and the resulting limitations it imposed on his travel, yet took no steps to provide reasonable accommodation and instead proceeded to terminate Plaintiff's employment.

72.     Defendant's stated reason for Plaintiff's termination — "reorganization" — is pretextual in nature, as Plaintiff had an unblemished performance history and a full workload at the time of his termination.

**D.     Plaintiff is Entitled to Punitive Damages.**

73.     A plaintiff may recover punitive damages when a defendant "engaged in discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1).

74.     At all times relevant herein, Defendant acted with the knowledge that it was lawfully required to provide a workplace free of discrimination to individuals like Plaintiff who were statutorily protected by the ADA, and yet Defendant terminated Plaintiff's employment in reckless disregard of those rights.

75.     As a direct and proximate result of Defendant's discriminatory conduct in violation of the ADA, Plaintiff has suffered not only tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses he suffered and will continue to suffer.

WHEREFORE, Plaintiff, John Jacobs, seeks a judgment against Defendant, Carnegie Institute d/b/a Carnegie Museums of Pittsburgh, for willful noncompliance of the ADA and seeks: (i) compensatory damages, including but not limited to past and future pecuniary and non-pecuniary losses, including suffering, mental anguish, inconvenience, and loss of enjoyment of life; (ii) punitive damages in an amount to be determined at trial and in an amount sufficient to deter Defendant from engaging in future conduct of a similar nature; (iii) equitable relief in the forms of back pay and front pay; (iv) the costs of instituting this action together with reasonable attorney's fees incurred by Plaintiff; (v) pre-judgment and continuing interest as calculated by the EEOC; and (vi) any further legal and equitable relief as this Court may deem just and proper.

## JURY DEMAND

76.    Plaintiff requests a trial by jury on all matters so triable.

Respectfully submitted,

**THE WORKERS' RIGHTS LAW GROUP, LLP**

Date:  May 11, 2026                    By:    /s/ Andrew M. Snyder
                                            Andrew M. Snyder, Esq. (Pa. I.D. No. 320004)
                                            /s/ Brendan K. Petrick
                                            Brendan K. Petrick, Esq. (Pa. I.D. No. 88968)
                                            /s/ Patrick W. Carothers
                                            Patrick W. Carothers, Esq. (Pa. I.D. No. 85721)

                                            The Workers' Rights Law Group, LLP
                                            Foster Plaza 10
                                            680 Andersen Drive, Suite 230
                                            Pittsburgh, PA 15220
                                            Telephone: 412.910.9592
                                            Facsimile: 412.910.7510
                                            andrew@workersrightslawgroup.com
                                            brendan@workersrightslawgroup.com
                                            patrick@workersrightslawgroup.com

                                            *Counsel for Plaintiff, John Jacobs*

13